UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Avanru Development Group, Ltd.</u>

    v.

<u>Town of Swanzey, NH Zoning Board, et al.</u>

Civil No. 24-cv-103-LM
Opinion No. 2025 DNH 049 P

# O R D E R

    Plaintiff Avanru Development Group, Ltd. ("Avanru") brings suit against the Town of Swanzey, New Hampshire Zoning Board (the "Zoning Board"), the Town of Swanzey, New Hampshire Planning Board (the "Planning Board"), certain individual members of both the Zoning Board and the Planning Board, and a Town official.[1] Avanru alleges, generally, that defendants violated its constitutional rights to due process and equal protection by singling out two of its proposed housing developments for heightened scrutiny during the zoning and planning approval process. Before the court is defendants' motion to dismiss for failure to state a claim upon which relief can be granted. Doc. no. 24. Avanru objects to the motion. Doc. nos. 28, 31. For the following reasons, the court grants defendants' motion (doc. no. 24).

---

[1] The individual members of the Zoning Board named as defendants are: Ann Karasinski, Adam Mulhearn, Bryan Rudgers, and Robert Mitchell (the "Zoning Board Defendants"). The individual members of the Planning Board named as defendants are: Richard Lane, Jane Johnson, Steve Malone, and Sylvester Karasinski(the "Planning Board Defendants"). All of the foregoing individuals are named as defendants in both their individual and official capacities. Matthew Bachler (collectively with the Zoning Board Defendants and the Planning Board Defendants the "Individual Defendants") is sued in his former official capacity as the Town's Director of Planning & Economic Development.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the well-pleaded factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). The court is not bound, however, to accept <u>all</u> factual allegations in the complaint as true—it may disregard facts which are "conclusively contradicted" by other sources of fact the court is entitled to consider on the motion. Lister v. Bank of Am., 790 F.3d 20, 23 (1st Cir. 2015) (quoting Soto-Negrón v. Taber Partners I, 339 F.3d 35, 38 (1st Cir. 2003)). In addition to facts alleged in the complaint, the court may also consider facts contained in exhibits to the complaint. <u>See</u> Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

**BACKGROUND[2]**

Avanru is a for-profit corporation based in Walpole, New Hampshire that focuses on developing affordable housing in southwest New Hampshire and the

---

[2] The facts are drawn from the complaint and the exhibits attached thereto.

surrounding region. Starting in the winter of 2020, Avanru sought approval to build two separate affordable housing projects in Swanzey. The "Airport Project," as proposed, would be located on a parcel of land near the Keene Dillant-Hopkins Airport that Avanru had a contractual option to purchase, and would consist of 76 age- and income-restricted residential units. The "West Swanzey Project," which is now fully constructed and occupied, is located on a parcel of land in West Swanzey and consists of 84 income-restricted units. At the time Avanru initially sought approval for the West Swanzey Project, Avanru held a contractual option to purchase the parcel it was proposed to occupy. Avanru now owns that parcel. While the two projects shared similarities, namely the identity of their developer, and that they were both 'affordable housing' projects premised on income-restrictions for tenants, they were distinct projects to be located in different neighborhoods, and they required separate applications for approval by the Zoning and Planning Boards.

Both the Airport Project and the West Swanzey Project were to be located in Swanzey's Business District, which does not allow multi-family housing projects as an ordinary permitted use. The Swanzey Zoning Ordinance only allows for a multi-family dwelling to be constructed within the Business District pursuant to a special use exception issued by the Zoning Board. Both of Avanru's projects thus required special use exceptions from the Zoning Board.

I.    <u>Avanru's Initial Application for Zoning Approval of the Airport Project</u>[3]

Avanru filed an application for a special use exception for the Airport Project on February 28, 2020. The Zoning Board considered Avanru's application at a public meeting on April 20, 2020. Due to the global disruption caused by the COVID-19 pandemic in March and April of 2020, the April 20 meeting was the first public meeting the Zoning Board had held since Avanru had filed its application, and the first meeting the Zoning Board ever conducted via videoconference.

At the April 20 meeting, Avanru's representatives spoke in support of their application and responded to questions and comments posed by members of the community. Despite Avanru's presentation regarding the merits of the proposed project, the community members in attendance uniformly voiced concerns about the impact the project would have on the neighborhood and the community at large. Specifically, residents noted concerns stemming from the perception that the project would increase density in the neighborhood, including concerns regarding increases in both vehicular and pedestrian traffic, and increased use of local resources such as a nearby pond. Multiple residents also noted concerns regarding the potential for the project to interfere with the rural character of the neighborhood, to create an eyesore, and to negatively impact property values. Two residents specifically noted concerns that, were the project to accept Federal Section 8 housing vouchers, such properties have been shown to negatively impact property values in the

---

[3] The following account of the Zoning Board and Planning Board meetings regarding Avanru's applications for approval of the Airport Project is drawn directly from the transcripts and meeting minutes for those meetings, which Avanru attached as exhibits to its complaint.

surrounding area. Due to the large number of community members that wished to speak at the meeting, the Zoning Board was unable to accommodate everyone within the allotted time. At 10:35 PM, thirty-five minutes after the meeting was scheduled to conclude, the Zoning Board passed a motion to continue the hearing to a special meeting on May 4, 2020.

The May 4 meeting began by continuing the opportunity for members of the community to pose questions and comments. The tenor and substance of the public comments and questions at the May 4 meeting were substantially similar to those of the prior meeting. At this meeting Attorney Michael Courtney, acting as counsel for Swanzey, advised all present that the public popularity of the project, or lack thereof, was not an appropriate consideration for the Zoning Board in determining whether to grant the application. Once all community members that wished to speak had been afforded an opportunity to do so, members of the Zoning Board asked a few questions of their own to Avanru's representatives. Those questions were generally targeted at specific project details, including the color of the building and the size and location of the fire lanes. Following the questions from members of the Zoning Board, and a final opportunity for public comment, Avanru's representative was afforded an opportunity to speak, once again, on behalf of its application.

Following Avanru's concluding statement, the Zoning Board brought the public portion of the meeting to a close to consider and vote on the application. In the closed meeting, the Zoning Board collectively reviewed and considered whether the proposed project met the four conditions necessary for issuance of a special use

exemption, which are laid out in the Swanzey Zoning Ordinance. Those conditions are:

   (a) The proposed use is similar to one or more of the uses already authorized in that district and is in an appropriate location for such a use;

   (b) Such approval would not reduce the value of any property within the district, nor otherwise be injurious, obnoxious, or offensive to the neighborhood;

   (c) There will be no nuisance or serious hazard to vehicles or pedestrians;

   (d) Adequate and appropriate facilities will be provided for the proper operation of the proposed use.

Town of Swanzey Zoning Ordinance, Section XII Art. C.2. In considering whether Avanru's application met the first condition, Zoning Board Defendant Mitchell compared the proposed project to two existing projects in the area that Avanru's representatives had brought up in their presentations. Mitchell stated that, because he felt that the proposed Airport Project was dissimilar to those existing projects due to their density, setbacks, and use of the land, he would vote that the first condition is not met. Defendant Ann Karasinski expressed her agreement with Mitchell. She voted no on the first condition, stating that she found the proposed Airport Project dissimilar to the existing projects identified by Avanru because, unlike the other projects, it was not obscured from public view by trees. Defendant Rudgers stated that he believed the proposed use was similar to uses already authorized, but that he did not believe the proposed project was in an appropriate location for such a use, and he therefore voted no as to condition one. Defendant Mulhearn also voted no as to condition one, but the record of the meeting does not show that he gave a specific reason for his vote. Only one member of the Zoning

Board, who is not named as a defendant in this action, voted that Avanru's application met the first condition necessary for granting a special use exception. While two members, Mitchell and Ann Karasinski, voted that the proposed project would be offensive to the neighborhood under the second condition, a majority of the Zoning Board voted that Avanru's application did meet the other three criteria. However, following from their determinations that the proposed Airport Project was not similar to one or more of the uses already authorized in the district, or was not in an appropriate location for such a use, the Zoning Board voted 4-1 to deny Avanru's application.

II.    <u>Avanru's Appeal of the Zoning Board Denial</u>

Avanru filed a motion for reconsideration of the denial on May 14, 2020, which the Zoning Board denied at its next public meeting on May 18. Avanru then filed an appeal of the Zoning Board's denial of its application to the Cheshire County Superior Court.

On December 14, 2020, the Superior Court vacated the Zoning Board's decision, finding that Zoning Board erred in its analysis of the first condition required for a special use exception. Specifically, the Court found that the Board had erred by comparing the proposed project to other projects that had previously been constructed pursuant to special use exceptions, rather than comparing the proposed project to the other uses explicitly permitted in the Business District. The Board also erred, according to the court, by finding the proposed project to be offensive without a sufficient factual basis in the record to support that finding. The Court also noted that it was inappropriate for the Zoning Board to focus on the

7

aesthetics of the proposed project, and to rely on public comments to make its decision.

On January 8, 2021, Swanzey appealed the Superior Court's order vacating its denial of Avanru's application to the New Hampshire Supreme Court. The Supreme Court affirmed the Superior Court's order on August 16, 2022.

III.   The Zoning Board's Approval of the Special Exception

Following the Supreme Court's ruling, Avanru returned to the Zoning Board to once again seek the necessary special use exception to proceed with the Airport Project. On September 19, 2022, the Zoning Board voted to grant the special use exception in a closed hearing. At the closed meeting and prior to approving the special use exception in its final form, the Zoning Board considered adopting a version of the exception that contained the following restrictions: "[the] development is not Section 8 but is age-restricted senior housing for 62 years of age and over. The tenants must have stable incomes. Persons making between $25,000 to $45,000 per year will likely qualify for these units." Doc. no. 1-13. These restrictions were proposed by Mulhearn, who stated that he understood the restrictions he articulated to mirror the age and income restrictions that Avanru had outlined in its presentation of its application to the Board. Indeed, Mulhearn articulated the restrictions by quoting directly from a portion of the draft minutes for the April 20, 2020 meeting that covered Avanru's initial presentation in support of its application.

While the Zoning Board initially voted to grant the special use exception with Mulhearn's restriction language included, later in the meeting the Board amended

the terms of the exception to remove the language regarding Section 8, as well as the specific income range. Thus, the final language of the special use exception approved by the Zoning Board at the September 19 meeting contained the following conditions: "that the development be age-restricted senior housing for 62 years of [age] and over and with stable incomes, as defined by the applicant at the Zoning Board of Adjustment Public Hearing of April 20, 2020 and recorded in the draft minutes of the April 20, 2020 [meeting]." Id.

On September 23, 2022, Swanzey issued a written Notice of Zoning Board Decision granting Avanru's requested special use exception for the Airport Project. The written decision stated that Avanru had been granted a special use exception to construct "a 76-unit age-restricted (62 and over) multi-family development," but did not contain any reference to the requirement that tenants have stable incomes, or any other restrictions based on Avanru's presentation of the project before the Zoning Board. Doc. no. 1-14. Avanru subsequently filed a motion for rehearing to clarify that the additional restrictions discussed on the record at the September 19 meeting but not included in the language of the notice of decision were not operative. At its October 17, 2022 meeting, the Zoning Board considered Avanru's motion for rehearing and confirmed that the language of the September 23 notice of decision was controlling, and that the additional restrictions discussed on the record on at the September 19 meeting were not operative.

IV.    Avanru's Application for Planning Board Approval of the Airport Project

Having secured zoning approval, Avanru applied for Planning Board approval of the design and plans for the Airport Project. The Planning Board began

its consideration of Avanru's application at a public meeting on November 10, 2022.

First, Avanru's representatives were given an opportunity to speak on behalf of

their plans for the project. Following Avanru's presentation, members of the

Planning Board posed questions to Avanru's representatives. Defendant Malone

began the questioning by inquiring about the specifics of the income restrictions for

tenants. Malone also asked about provisions for household refuse management,

Americans with Disabilities Act compliance, and the number of one-bedroom and

two-bedroom units in the design. Defendant Lane asked about plans for propane gas

storage on the property, about parking accommodations for visitors, and about

compliance with Federal Aviation Administration ("FAA") requirements due to the

proximity to Keane Dillant-Hopkins Airport. Defendant Johnson asked for further

explanation of the septic plan design.

After the Planning Board members concluded their questions, the Board

opened the floor to members of the public that were in attendance. As had been the

case at the Zoning Board meetings, a significant number of community members

wished to ask questions and make comment on Avanru's plans for the Airport

Project. Once again, the community members in attendance generally expressed

concerns about the size of the project relative to the plot and the location, and the

impact that project would have on the surrounding area, infrastructure, and

residents. One resident expressed a specific concern about the appearance of the

proposed design, stating that a square building would not fit in well with the

surrounding neighborhood. Another resident opined about the advantages of a

pitched-roof design relative to the proposed flat-roof design. Another resident stated

a concern that, due to the project's proposed height, it could block sunlight to nearby homes. Another community member raised a concern about the height of the structure, stating that the four-story project would stand out from the surrounding two-story structures. Residents also asked questions and made comments regarding the specifics of the age and income restrictions for tenants, and how the income restrictions would impact the project's tax obligations to the Town of Swanzey.

Following the conclusion of the public comment opportunity, members of the Planning Board made several requests for Avanru to consider modifying the project plans. Specifically, Planning Board member Michael York, (who is not named as individual defendant in this case), asked that Avanru consider making changes to the design to improve its aesthetic value, and assuage concerns about impact to property values in the area. Following up on that request, Malone asked Avanru to consider altering the project design to remove the top floor and to add a pitched roof. Following several additional questions regarding certain specifics of the design drawings, the Planning Board passed a motion to continue the public hearing on Avanru's application to its next meeting on December 8, 2022.

The December 8, 2022 meeting began with a presentation from Avanru's representatives noting changes Avanru had made to the project plans based on the community and Board feedback at the prior meeting. Specifically, the plan changes consisted of adding 44 additional windows to the design. The plan changes did not, however, include any modifications to the height of the structure, or the flat-roof design. Following Avanru's presentation, there was an opportunity for public questions and comments, during which members of the community expressed a

number of sentiments and concerns similar to the ones that had been expressed at the prior meeting. Multiple community members once again highlighted their displeasure with the flat-roof design, stating that it was not in aesthetic harmony with the other structures in the area. Following the public comment opportunity, the Chair of the Planning Board Scott Self (who is not named as an individual defendant) requested comments from the other Board members. The Chair noted that, while residents had continued to raise concerns regarding the building height and the roof design, the proposed building height was allowed under the applicable rules, and any requirement by the Board for a pitched roof would likely be challenged in court. Following further discussion, the Board passed a motion to continue the hearing to its following meeting so that Avanru could amend its plans to comply with a vegetation requirement imposed by ordinance. Prior to closing the hearing, the Board also voted to deny Avanru's request for an allowance to reduce the number of parking spaces otherwise required by ordinance by 20%, despite the fact that Avanru had presented a study in support of the request.

Following that vote, the Chair prompted a discussion about the roof design. Lane stated that he felt the roof design should be changed to make it more compatible with the neighborhood. Johnson agreed, noting that the building would sit directly across the street from houses with pitched roofs, and that while there were other buildings in the surrounding area with flat roofs, none of those buildings were as close to houses as Avanru's proposed project. Following an additional round of public comment, in which community members once again voiced a strong preference for a pitched-roof design, the Board voted to request Avanru to present

amended roof designs, such as pitched or gabled/mansard designs, at the following meeting.

The Planning Board reconvened on December 12, 2022 to continue its hearing on Avanru's application. At the outset, Avanru's representative presented changes to the project plans in response to the comments and requests from the Board and the community at the prior meeting. Those changes included: adding additional landscaping and trees; improving the travel layout around the building for emergency responders; adding an additional recreation area; and, most notably, amending the building design so that the front-facing façade would be three stories with a faux pitched roof, while the middle section of the building would remain four stories with a flat roof. This adjustment to the height and roof design resulted in a reduction of the total number of units from 76 to 74. The Chair responded to Avanru's presentation by noting that the applicant had made a number of material changes, and recognizing that a lot of work had been done to address the concerns raised at prior meetings regarding the project's appearance. Defendants Johnson and Malone expressed agreement that the new plan was more attractive and appreciation for Avanru's efforts in amending the design. Lane, however, expressed confusion as to why it had taken so long for Avanru to present a visually pleasing design, and stated that he was still not entirely satisfied. An opportunity was given for public comment, during which community members in attendance once again expressed concerns about the project, despite the updated design. In the context of an exchange regarding specific aspects of the updated architectural design, Johnson made the following statement:

> A couple of times you have said "we are being treated differently." I think you have been treated differently. It's taken a long time, but this is quite a different project. And the size of this project, on the size of the lot that it's situated on, and in the area that it is situated, it's so different from anything else around there, and I think that's why it seems that you've been treated differently.

Doc. no. 1-29 at 35.

The Chair then closed the public hearing and stated possible conditions for final approval of the application, which included certain updates to plans for compliance with requirements, including the landscaping, drainage, and utilities plans, as well as approval from the FAA, the New Hampshire Department of Environmental Services, and the New Hampshire Department of Transportation. Following this discussion, Lane stated that he would like an independent evaluation concerning the effect of the project on surrounding property values in the neighborhood. The Chair responded by stating that such a request was problematic because it was not appropriate for the Planning Board to set conditions for approval and then create additional conditions once the applicant had met the originally stated requirements. The Chair further noted that such an evaluation would necessitate an additional public comment opportunity, and that the request should have been raised earlier in the process. Lane and Johnson nevertheless stated that they did not feel it was too late to consider such an analysis. Before closing the meeting, the Board passed a motion to table the discussion regarding an independent analysis to its next meeting, and to seek advice from counsel regarding whether an independent analysis was permitted at this juncture.

The Planning Board reconvened on January 12, 2023. At the start of the January 12 meeting, the Board considered a letter from counsel for Swanzey advising that the Planning Board was not empowered to commission an independent analysis of the project's impact on surrounding home values at this juncture. Johnson and Lane, however, stated on the record that they disagreed with the opinion of Swanzey's counsel. Defendant Karasinski also voiced skepticism as to the merits of the study Avanru had previously submitted on the subject during the Zoning approval process. Lane further stated that he had consulted with unnamed contacts purported to have expertise in real estate matters, and that those contacts had opined that the Airport Project would harm surrounding property values. Johnson reiterated the now familiar concern that the project was still too large for the parcel given the existing character of the residential neighborhood. York then opined that, while he agreed with the concerns expressed, he believed that they were not proper bases on which to deny Avanru's application. The Chair expressed agreement with York's position. Following this discussion, a vote was held on a motion to approve Avanru's application. The motion failed by a vote of four to three, with the four Planning Board Defendants voting against.

Following the vote, the Chair instructed that the Board was required to state its grounds for denial and asked the Planning Board Defendants to articulate such grounds. Karasinski stated that he voted to deny because Avanru had not agreed to his request to extend the time limit to rule on the application by sixty-five days. Lane also referenced the refusal to extend the time limit, stating that he wanted to further explore the project's potential impact on property values, which would be

impossible without an extension. Malone stated that the project as proposed was not in harmony with the surrounding neighborhood and would ruin the character of the neighborhood and the town. The Chair responded to these reasons by stating that he did not believe they were sufficient to support the denial because they made no reference to the applicable ordinances. Johnson once again opined that the project was too large for the parcel given the character of the surrounding neighborhood, to which the Chair responded that the relevant consideration was not the local neighborhood, but the Business Zoning District at large. In response to this, Johnson made the following statement:

> The only thing I can say—and this is not my opinion—but this is why I don't think I can vote for this—because I am an elected member of the Planning Board. The people of Swanzey have elected me, and that's who I represent here. I don't represent me. I don't like the looks of the building, and I certainly wouldn't want it in my neighborhood, and I'd fight like hell to keep it out of my neighborhood. And it probably wouldn't make any difference, just like these people.

> But I am here to represent the Town of Swanzey that I care very much about. And I'd like to see things done in Swanzey that enhance its value, not something that is an enormous plot right in the middle of what we have. I don't know how to better say it. Maybe if I had time to think more about it, I would. But that's where I'm coming from. I can't vote for it.

Doc. no. 1-22 at 10.

The Chair responded, once again, by stating that he did not believe the reasons articulated by the Planning Board Defendants were valid reasons to deny the application. Despite this admonition, Malone made a motion to deny the

application. That motion passed by a vote of four to three, with the Planning Board defendants voting to the deny the application.

The Planning Board issued a written Notice of Decision denying Avanru's application on January 17, 2023. In the Notice of Decision, the Planning Board cited three reasons for the denial: (1) "the over intensification of land use"; (2) "the inappropriateness of the location considering a recent plane crash;" and (3) "the proposal did not fit the character of the neighborhood." Doc. no. 1-33. Immediately following issuance of the Notice of Decision, counsel for Avanru sent a letter to counsel for Swanzey instructing Swanzey to preserve all evidence relating to the Planning Board's consideration of Avanru's application, signaling Avanru's intent to commence litigation regarding the denial.

Following receipt of Avanru's preservation notice, the Planning Board reconvened on February 2, 2023 to reconsider its denial of Avanru's application. While each of the Planning Board Defendants again expressed their reservations about the project, the Board nevertheless passed a motion to approve Avanru's application by a vote of five to one. Only Malone voted against granting the application on reconsideration. The Planning Board subsequently issued a written notice of decision on February 6, 2023 granting Avanru's application subject to certain administrative conditions for approval, including the submission of required Federal and State permits, and detailed technical plans.

V.    <u>Avanru's Applications for Approval of the West Swanzey Project</u>

Avanru filed an application with the Zoning Board for a special use exception to construct the West Swanzey Project sometime prior to March 15, 2021. That

17

application was considered and approved by the Zoning Board at a March 15 public meeting. The Board issued a written Notice of Decision formalizing the approval on March 17, 2021.

Avanru subsequently filed an application with the Planning Board for site plan approval for the West Swanzey Project. The Planning Board took up consideration of that application at a public meeting on May 13, 2021. After reviewing that application, the Planning Board requested that Avanru submit proposals for additional roof designs beyond the flat-roof design of the initial proposal. The Board continued its consideration of the West Swanzey Project application at its next public meeting on May 27, 2021. At that meeting, Avanru presented proposals for both a low-pitch-roof design, and a gable-roof design. Members of the Planning Board expressed their preference for the gable design, to which Avanru's representatives responded that such a design would increase the cost of the project by $1,000,000. Ultimately the Planning Board voted unanimously in favor of a motion endorsing the gable-roof design, following statements from members of the Board and the public that the gable-roof design would greatly enhance the project's harmony and compatibility with the existing site and neighborhood. The Board also voted to approve a motion granting Avanru's request to reduce the number of parking spaces below the number presumptively required by ordinance. Following passage of those motions, the Planning Board entered a closed session. In the closed session the Board voted on a motion to approve Avanru's application for the West Swanzey Project. That motion was passed by a vote of six to one, with only Johnson voting against.

The Planning Board issued a written Notice of Decision on June 1, 2021 memorializing the site plan approval for the West Swanzey Project. The Notice of Decision articulated a number of conditions of approval, including the requirement that the West Swanzey Project be constructed with a gable-roof design, as proposed at the May 27 meeting. Avanru alleges that the change to the gable-roof design actually resulted in an increase of approximately $550,000 to the overall cost of the West Swanzey Project.

VI.    <u>Avanru's Claims</u>

In the instant lawsuit, Avanru brings seven claims for relief against all defendants:

- **Count I**: claims relief under 42 U.S.C. § 1983 alleging that defendants violated Avanru's right to equal protection under the law guaranteed by the Fourteenth Amendment to the United States Constitution. This Count is premised on a so-called "class-of-one" theory of discrimination.

- **Count II**: claims relief under 42 U.S.C. § 1983 alleging that defendants violated Avanru's right to substantive due process guaranteed by the Fourteenth Amendment to the United State Constitution.

- **Count III**: claims relief under the New Hampshire Constitution alleging that defendants violated Avanru's rights to equal protection under the law guaranteed by Part I Articles 2 & 12 of that document.

- **Count IV**: claims relief under the New Hampshire Constitution alleging that defendants violated Avanru's rights to substantive due process guaranteed by Part I Articles 2 & 12 of that document.

- **Count V**: claims relief under RSA 643:1 alleging that the Zoning Board and the Zoning Board Defendants committed official oppression against Avanru.

- **Count VI**: claims relief under RSA 643:1 alleging that
  the Planning Board and the Planning Board Defendants
  committed official oppression against Avanru.

- **Count VII**: seeks attorney fees and double taxation of
  costs under RSA 677:14 alleging that the Zoning Board
  abused its power and acted with malice, bad faith, or
  gross negligence in denying Avanru's initial application
  for a special use exception.

## DISCUSSION

Defendants move to dismiss Avarnu's complaint in its entirety. As the court's

analysis turns on the sufficiency of Avanru's allegations to state plausible claims for

relief under Counts I & II, the court begins with those counts.

First however, a note on the court's treatment of the complaint and the

attached exhibits. On a motion to dismiss under Rule 12(b)(6), the court must treat

all well-pleaded factual allegations in the complaint as true and make reasonable

inferences in the plaintiff's favor, but the court is not required to accept conclusory

allegations as true merely because they are stated in the complaint. See Cardigan

Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015). In

addition to facts alleged in the complaint, the court is also entitled to consider facts

contained in exhibits to the complaint. Freeman, 714 F.3d at 35; see also Trans-

Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008)

("Exhibits attached to the complaint are properly considered part of the pleading

'for all purposes,' including Rule 12(b)(6)." quoting Fed. R. Civ. P. 10(c)). Separately,

the court is also entitled to consider matters of public record, documents of

undisputed authenticity, and documents sufficiently referred to in the complaint,

even where those documents are not attached as exhibits to the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Just as the court is not bound to credit conclusory allegations, it is also not required to credit factual allegations in the complaint that are "conclusively contradicted" by other sources the court may properly consider on the motion. See Lister, 790 F.3d at 23; Soto-Negrón, 339 F.3d at 38. In considering when factual conflicts should be resolved in favor of the exhibits, the Eleventh Circuit has stated that "[t]he rule is specific over speculative, concrete over conclusory." Gill v. Judd, 941 F.3d 504, 514 (11th Cir. 2019). "When exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." Id.

Here, Avanru submitted 74 exhibits to its complaint consisting primarily of meeting minutes and full transcripts of all relevant hearings before both the Zoning Board and the Planning Board regarding both the Airport Project and the West Swanzey Project. Many of these exhibits contradict conclusory allegations in Avanru's complaint regarding what transpired at various public meetings, defendants' treatment of Avanru and its projects, and defendants' motivations for their actions. To the extent the complaint makes general and conclusory allegations that are contradicted by specific facts contained in the transcripts and meeting minutes, the court is entitled to credit the specific facts evidenced in the exhibits. See Lister, 790 F.3d at 23; Gill, 941 F.3d at 514.

The court also notes that, even if Avanru had not attached the meeting minutes and transcripts to the complaint, the court would still have been entitled to consider them on this motion because: (1) they are public records; (2) Avanru

referred to them extensively in its complaint; and (3) Avanru does not dispute that they accurately reflect the relevant proceedings, and cannot plausibly do so given its extensive reliance on them in framing its pleadings. See Watterson, 987 F.2d at 3.

I.      Avanru Fails to Allege Conduct by Defendants Sufficient to State a Claim Under § 1983 Regarding the Zoning Disputes at Issue

It is well settled in the First Circuit that ordinary "run of the mill disputes between a developer and a town planning agency" are not cognizable under 42 U.S.C. § 1983. Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir. 1982). Otherwise, "[v]irtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to federal court." Id. at 831. As Avanru acknowledges, the rule denying § 1983 liability for garden variety zoning disputes "is designed to avoid converting federal courts into super zoning tribunals." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004); see also Vill. of Belle Terre v. Boraas, 416 U.S. 1, 14 (1974) (Marshall, J. dissenting) ("[A Federal Court's] role is not and should not be to sit as a zoning board of appeals."). The rule recognizes that, in "the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief." Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992). It also accounts for the fact that, in ordinary cases, plaintiffs have "adequate state law remedies to vindicate these claims without resort to a federal court." Creative Env'ts, 680 F.2d at 833.

Thus, to state a claim under § 1983 in the context of a zoning dispute, a plaintiff must allege that the defendants' actions were "tainted with fundamental

procedural irregularity, racial animus, or the like." Id.; see also PFZ Properties, Inc.
v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991), overruled on other grounds by San
Geronimo Caribe Project, Inc. v. Acevedo-Vila, 687 F.3d 465 (1st Cir. 2012)
(requiring well-pled allegations of "invidious discrimination" on the basis of a
protected classification such as race or sex, or "egregious procedural irregularities or
abuse of power" to state a claim under § 1983 in the context of a zoning dispute).
Allegations that "planning officials . . . clearly violate[d]" governing law are not
sufficient to meet this strict standard. Creative Env'ts, 680 F.2d at 833. Neither are
allegations that such officials "engaged in adversarial and even arbitrary tactics" in
opposition to a plaintiff's interests. Id. at 829.

The factors motivating Creative Environments are equally relevant to class-
of-one style Equal Protection claims. Indeed, the First Circuit has explicitly warned
of the "obvious danger to opening up local permitting decisions to detailed federal
judicial scrutiny under [the] equal protection rubric." Nestor Colon Medina, 964
F.2d at 44. Because "[i]f disgruntled permit applicants could create constitutional
claims merely by alleging that they were treated differently from a similarly
situated applicant, the correctness of virtually any state permit denial would
become subject to litigation in federal court." Id. at 44-45. To address these
concerns, the First Circuit imposed an additional requirement for class-of-one
claims in the zoning context: the alleged disparate treatment must have been
motivated by a "malicious or bad faith intent to injure." SBT Holdings, 547 F.3d at
35.

Even viewed in the most favorable light possible, the allegations in Avanru's complaint and its exhibits cannot clear these high hurdles. First, Avanru devotes significant space in both its complaint and its briefing to the allegation that the Zoning Board based its initial denial of Avanru's application for approval of the Airport Project on impermissible factors such as the perceived unpopularity of the project and comparison of the project to previously granted special use exceptions, rather than to generally permitted uses within the relevant zoning district. Similarly, Avanru also highlights its allegation that the Planning Board Defendants initially voted to deny approval of the Airport Project plans based on impermissible factors such as size and density, despite the fact that the plans complied with all objective criteria laid out by law. But these allegations, even taken as true, amount to nothing more than allegations that defendants "clearly violate[d]" the applicable local ordinance, and are insufficient to state a claim under Creative Environments. Id. at 833; see also Cloutier v. Town of Epping, 714 F.2d 1184, 1189 (1st Cir. 1983) (holding that even "blatant application of ordinances which [zoning officials] knew were totally void" was insufficient to establish § 1983 liability).

Second, Avanru points to allegations that defendants' wrongdoing required it to "endure years of delay" which caused "the cost to develop the project [to] skyrocket[.]" Doc. no. 1 at 2; doc. no. 31 at 2 n.2. The allegation that the defendants' wrongdoing caused "years of delay" is conclusory and is contradicted by the exhibits to the complaint. The meeting minutes show that, taking account for minimal disruptions in March of 2020 due to the global outbreak of COVID-19, defendants considered and resolved each of Avanru's applications within a reasonable

24

timeframe. Indeed, the delay in approval of the Airport Project was actually caused by the lengthy appeal process in state court.[4] But defendants did not engage in wrongdoing by exercising their right to appeal the state court judgment.

Third, Avanru offers allegations that defendants subjected it to arbitrary requirements regarding roof designs and a "made up . . . formula" regarding green space that were "poisoned pill[s]" intended to "cripple [the projects'] economic viability." Doc. no. 31 at 3; doc. no. 1 ¶ 90. But even drawing the inference in favor of Avanru that defendants intended these actions to delay or thwart approval of the projects, these allegations amount to nothing more than "adversarial" and "arbitrary" tactics, which do not give rise to § 1983 liability in these circumstances. Creative Env'ts, 680 F.2d at 829 (assuming that defendants invented new and onerous requirements for plaintiffs with the specific purpose of frustrating plaintiffs' development efforts, and finding that even if true, such facts would still not justify § 1983 liability in the zoning context). They cannot be considered more serious than the "malicious delaying tactics" that were insufficient to support liability in Cloutier. 714 F.2d at 1189 (finding allegations that zoning officials committed perjury and provided false evidence against plaintiff applicants in order to delay construction were insufficient to support § 1983 liability).

Avanru seeks refuge in the few cases from this Circuit where courts have entertained § 1983 claims in zoning disputes, but the facts of those cases provide no

---

[4] The exhibits to the complaint conclusively establish that the total time from application to approval was approximately 35 months, 27 of which are accounted for by the state court appellate process.

shelter. First, Avanru's invocation of [Valentin v. Town of Natick, 707 F. Supp. 3d 88, 102 (D. Mass. 2023)] — falls flat. There, the District of Massachusetts found that evidence of actual racial animus was sufficient to elevate the plaintiff's claims above the "run of the mill" zoning disputes contemplated in <u>Creative Environments</u>. Avanru seeks to analogize the racial animus that was key in <u>Valentin</u> to animus toward affordable housing, which it claims was evident in defendants' conduct and statements. As support for this factual allegation, Avanru highlighted the following quote from Johnson in its initial brief in opposition to the motion:

> I certainly wouldn't want it in my neighborhood, and I'd fight like hell to keep it out of my neighborhood . . . A couple of times you have said 'we are being treated differently.' I think that you have been treated differently!

Doc. no. 28 at 7. Even crediting arguendo the necessary analogy between racial animus and animus toward residents of 'subsidized' or 'low-income' housing, Avanru's allegation that such animus actually motivated any of the defendants is conclusory and is contradicted by the exhibits to the complaint. Rather than proving its point, Avanru's carefully constructed quote, placed back into context, strongly supports an incompatible inference—that Johnson opposed the project because she thought it was too big for the parcel given the surrounding neighborhood and was not an appropriate use of the land:

> **A couple of times you have said "we are being treated differently." I think you have been treated differently.** It's taken a long time, but this is quite a different project. And the size of this project, on the size of the lot that it's situated on, and in the area that it is situated, it's so different from anything else around there, and I think that's why it seems that you've been treated differently.

Doc. no. 1-29 (transcript of 12/15/22 Planning Board Meeting) at 35 (emphasis

added to show portion of quote included in brief).

> The only thing I can say—and this is not my opinion—but
> this is why I don't think I can vote for this—because I am
> an elected member of the Planning Board. The people of
> Swanzey have elected me, and that's who I represent here.
> I don't represent me. I don't like the looks of the building,
> and **I certainly wouldn't want it in my neighborhood,
> and I'd fight like hell to keep it out of my
> neighborhood.** And it probably wouldn't make any
> difference, just like these people.
>
> But I am here to represent the Town of Swanzey that I care
> very much about. And I'd like to see things done in
> Swanzey that enhance its value, not something that is an
> enormous plot right in the middle of what we have. I don't
> know how to better say it. Maybe if I had time to think
> more about it, I would. But that's where I'm coming from.
> I can't vote for it.

Doc. no. 1-22 at 10 (transcript of 1/12/23 planning board meeting) (emphasis added).

The immediate context of both quotations contradict Avanru's claim that Johnson

"proudly admitted on the record" that she treated the project differently because it

was income restricted. Doc. no. 28 at 7. Instead, that context conclusively shows

that Johnson articulated her concerns with the project related to its size and

location, and with how the proposed design fit into the surrounding neighborhood.

Avanru's claim that defendants exhibited an "incessant focus" on the issue of

Section 8 housing is also conclusively contradicted by the meeting minutes and

transcripts. Doc. no. 31 at 5. Review of the transcripts demonstrates that

defendants' relatively infrequent mentions of Section 8 track closely with Avanru's

own discussions of the topic. In fact, it was Avanru that first raised the topic of

Section 8 housing, stating in the opening moments of its very first presentation to

the Zoning Board that the Airport Project would <u>not</u> be a Section 8 project. Doc. no. 1-1 at 6.

Avanru's emphasis on the Zoning Board's initial reference to Section 8 in the terms of the Airport Project's special use exception also fails to support a reasonable inference of animus. First, the record of the September 19 meeting, at which that condition was briefly discussed and adopted, conclusively demonstrates that it was inspired entirely by Avanru's own description of the project. Mulhearn, who proposed the condition language, did so by reading from the minutes of the April 20 meeting and directly quoting Avanru's own statement describing the nature of its proposal. Doc. no. 1-13 at 3. Far from evincing animus, Mulhearn's comments suggest an intent to hold Avanru to its own word. Further, the condition itself was not included in the final version of the special use exception approved at the conclusion of deliberations. Instead, the terms of the condition were amended at the behest of the Zoning Board itself, and with no prompting from Avanru, to remove the reference to Section 8. <u>Id.</u> at 6. Tellingly, neither Mulhearn nor any other member of the Board protested, or even commented on, this amendment. <u>Id.</u> And when the Zoning Board issued its written Notice of Decision, the terms of which actually set the operative conditions on the special use exception granted, the Notice contained no reference to income restrictions at all. Doc. no. 1-14.

Avanru's invocation of <u>Brockton Power LLC v. City of Brockton, 948 F. Supp. 2d 48, 67-71 (D. Mass. 2013)</u> is equally unavailing. Avanru makes much of its allegations that defendants, at times, acted against the advice of counsel, including by impermissibly considering the popularity of the projecting in denying zoning

28

approval, and (similarly) by denying planning approval for impermissible reasons relating to the potential impact of the Airport Project on property values. But while the Brockton Power court did indeed identify the defendants' defiance of counsel in that case as one factor supporting its finding that the plaintiffs had alleged sufficiently severe misconduct to clear the Creative Environments bar, it was only one of many such factors. The court noted that it was "not a case where the plaintiffs complain[ed] about one or two discrete permit denials or other obstructive acts that were subsequently remedied by state courts," but rather one where "repeated summary denial—or refusal to even consider—a series of applications . . . require[d] repeated resort to state courts to obtain relief." Brockton Power, 948 F. Supp. 2d at 68. Further, the court found that "[t]he systemic nature of defendants' refusal to provide any meaningful . . . process sets this case apart from those previously considered by courts in this jurisdiction, and suggests the defendants were not misinterpreting or misapplying the law, but were collectively determined not to follow it." Id. In addition to the sheer scope of resistance and frustration, which dwarfs the allegations Avanru advances here, the Brockton Power court identified additional indicia of injustice: namely, allegations that the defendants were denying the plaintiffs' applications in furtherance of their own personal interests. Id. at 69-70 ("The conscience-shocking nature of the alleged conspiracy as a whole is underscored by allegations that the defendants often acted against the advice of legal counsel, to further their own personal and political interests, and while knowing there was no legal justification for their actions."). Avanru asserts no such allegations here.

Finally, Avanru dedicates pages and pages of its complaint to detailed allegations regarding other housing projects (they claim were similarly situated) that allegedly "sailed through" the Swanzey zoning and planning process. Doc. no. 1 at 27. These allegations, according to Avanru, support its class-of-one equal protection claim, by demonstrating that Avanru was "intentionally treated differently from other[] similarly situated" property developers without any "rational basis for the difference in treatment." SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008). Even accepting, however, that (1) the other projects were indeed similarly situated; (2) the other projects were indeed treated differently; and (3) there was no rational basis for the difference in treatment, Avanru's comparative allegations are still insufficient to state a class-of-one claim in the context of a zoning dispute because the First Circuit has imposed an additional requirement for class-of-one claims in the zoning context: the alleged disparate treatment must have been motivated by a "malicious or bad faith intent to injure." See SBT Holdings, 547 F.3d at 35.

Setting aside any other potential pitfalls for Avanru's class-of-one claim, this requirement is fatal. Even accepting all well-pled factual allegations as true, given both the specific statements made by the Individual Defendants, and their overall pattern of conduct, the court cannot reasonably infer that defendants acted out of a malicious intent to injure Avanru, rather than a good faith intent to do their duty for the town of Swanzey. This conclusion is especially clear upon consideration of the minutes of each hearing and the attached rulings that followed, which demonstrates a striking coherence between the concerns articulated by the

Individual Defendants and the legitimate (non-discriminatory) concerns raised by members of the public. If anything, the record shows that, while many members of the community did raise impermissible topics for zoning and planning consideration, such as Section 8 and the projects' proposed income restrictions, the Individual Defendants focused their questions on permissible concerns relating to the size of the structures relative to the plots, the designs of the structures, parking areas, and green spaces relative to the surrounding neighborhoods, and the impact that the projects would have on surrounding property values. Avanru chose to attach to its complaint all of the transcripts, meeting minutes, and rulings. Upon consideration of those attachments, the court cannot plausibly conclude that the defendants were motivated by an intent to injure.

For the foregoing reasons, Avanru fails to state a claim for relief under either Count I or Count II.

II.    In the Absence of any Viable Federal Claim the Court Declines to Exercise Jurisdiction Over the Remaining State Law Claims

In the First Circuit, "it is settled law that district courts may decline to exercise supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." Borrás-Borrero v. Corporación del Fondo del Seguro del Estado, 958 F.3d 26, 36-37 (1st Cir. 2020); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (abrogated by statute on other grounds) ("[W]hen the federal-law claims have dropped out of [a] lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). Here, the

§ 1983 claims in Counts I & II were the only claims in the action arising under Federal Law, and the suit is in its early stages. Additionally, two aspects of this case weigh especially heavily in favor of exercising the court's discretion to dismiss the pendant state-law claims: (1) the same concern with allowing federal courts to become 'super zoning tribunals' that animated the entire preceding discussion also counsels the court to decline to exercise jurisdiction over this dispute in its entirety, and (2) the state-law claims, especially those contained in Counts III & IV, pose complex questions of state law that would be more appropriately answered by a state court.

For those reasons, the court will decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss Counts III-VII without prejudice. See Borrás-Borrero, 958 F.3d at 37 (instructing that in like situations supplemental state-law claims must be dismissed without prejudice).

## CONCLUSION

For the reasons explained above, defendants' motion to dismiss is hereby granted. Counts I & II are dismissed with prejudice. Counts III-VII are dismissed without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 10, 2025
cc:    Counsel of Record